All right. Well, good afternoon, right? It feels still morning to me, but it's the afternoon. It's moving so quickly. Council, you're all going to have to help me on names, so we'll do it like the old days. Let's just have your appearances so I don't butcher any names. I'm Sue Mayday, Your Honor. Yeah. I'm Ernie Priet for Mr. Montanez. Great. And Howard Hopkirk for the Department of Corrections. Okay. Well, great to see you all, and let's jump right to it. May I proceed, Your Honors? Yes. We'd like to reserve one minute for rebuttal. Good afternoon. May it please the Court, my name is Sue Maynay, and I represent one of the due process protections for inmates. They do not lose their due process protections just when they enter the walls of the prison. And specifically today, we're looking at what happens to money in their inmate trust accounts, so the accounts that hold their funds that they need for essentials while they're living in prison. So let me ask you this question. If Hale had received notice of the policy, is there a due process violation if he didn't receive notice of the specific amount that he would owe over whatever period of time? There are multiple violations of due process here. One is he never received any notice, and we contend that the handbook is insufficient notice. It doesn't say anything aside from the fact that the Department of Corrections can collect money. But similarly, he also had no opportunity to be heard or object. And then when he tried to use the grievance system, it was completely useless. Does he get notice at sentencing? It's just not that he understands that there's going to be fines and costs levied, he just doesn't understand, not understand, that's not the right word. He isn't informed of the amount? It's two parts. He is informed of the amount of the restitution and fines, but he's not informed of how much costs are going to be assessed. That's an administrative act by the clerk of courts that's done several days later. In the case of Monster Montanez, it was actually weeks later. But similarly, he's also not told that the Department of Corrections is going to make automatic deductions from his inmate account. So he knows he's going to owe this money, and actually, the amount that he, he's not disputing here that he actually owes costs, fines, and restitution. What he's disputing here and what he feels is the violation is that he never got any notice or hearing or opportunity to be heard that the money is going to be just taken automatically from his account. So kind of like, you know, this was his first time in prison, he enters prison, the first time he finds out that the Department of Corrections has his authority is that he sees money missing from his account, and he immediately wonders where it's gone. Aren't pre-deprivation, aren't pre-deprivation hearings too onerous? They are not, Your Honor. And I want to point out that this case was on remand from this court, who asked a number of questions concerning what types of processes entailed. And specifically, in the opinion, the Montanez versus Beer opinion from 2009, there are multiple questions and, and concerns about what notice and opportunity to be heard is required before that money is taken from the account. What would be satisfactory? Well, we are not asking for... Would what they do in Ohio be satisfactory? That could be. At least that would be certainly more than they have. It's a written form of objections. If the Department of Corrections, for example, wanted to do a little more, that's also feasible because we anticipate that not every single inmate would want some sort of look at this. They might say, okay, but for those who have some issue, there might be errors. What does Ohio, I mean, what is the process in Ohio? Every inmate has the opportunity to assert exemptions from the policy. In writing? Yes. Yes. Or, and presumably, so some process to address... Are there exemptions from the policy in Pennsylvania? No, absolutely none. And that's clear from the record. I mean, after depositions of 16 individuals through the grievance process, they have made no exceptions whatsoever. Secretary Beard in his 10 secretary said he had never heard of anyone having a change in the 20% deduction. Are you asking for a hearing at the outset before the deductions begin, or are you asking for a hearing every time, every month when there are deductions going to be made? No, Your Honor. At the beginning. One of the issues with Mr. Hale and Mr. Montan is that they just received no notice whatsoever. It was a complete surprise to each of them. And they had no opportunity to be heard. And both of them had specific issues and errors in their situations that they would have liked to have been addressed. Well, now the Commonwealth seems to differ with you on, what were they really notified of? That they were notified that this was the procedure, that Mr. Hale had the handbook, and he had the orientation where this was talked about. And that is why we believe there are genuine issues of material fact that make summary judgment inappropriate. If that, in fact, did happen, is that sufficient? No, Your Honor. That still is insufficient, even if he got the memo, he got something in the orientation, he got some type of notice, because he had no opportunity to respond to that at all. And then similarly, any process that happened afterwards is really pretty useless, in my opinion. Let me just press you a little bit. Respond in what way? The costs of a proceeding are going to be determined by the state. Are you talking about an ability to contest the calculation of the cost? No, Your Honor. How much is taken, for example, each month or each time? So, for example, Mr. Hale had certain legal, his rights to access the courts were affected because he wasn't able to send out mail to the courts because of the various assessments that were taken, the automatic funds that were taken out. Looking at the balance... But he doesn't have a constitutional right to that? He does have a constitutional right to access to the courts under the First Amendment, albeit... No, no, no. He has a... Obviously, yes. Well, my point is this. You're asking us for a pre-deprivation hearing, and you're saying that you should have that before they take anything, but he's unable to contest, in the first instance, the fact that there are going to be costs assessed, right? I mean... I mean, that is a larger issue. It's very difficult... That's not one of the issues you've raised, right? Correct. You're not contesting the fact that costs are being assessed. So... That would have to be done in the original appeal from the conviction, right? That's correct, Your Honor. Right. If it got overturned, then you'd be able... Right? So, if the issue is not the what are we really talking about? Is it 20%? Yes, exactly. We're talking about his right to have control over his property, his money while he's in prison, which doesn't go away just because he's in prison. So, they have prisoners, despite what the department contends, do have a lot of need for their money. They have to buy their own soap. They have to buy their own toothpaste. They have to... So, there's a constitutional right to have less than 20% deducted? He has a constitutional right to be heard regarding that amount. The statute that authorizes... If I may... Believe me, I want to hear the answer to this. The statute 9728 authorizes the Department of Corrections to make these withdrawals, to collect this money. But it must be done within a constitutional basis. So, in our briefs, I point out if the Department of Corrections decided to collect money only from African-American inmates and not white inmates, that would be obviously a violation of the Equal Protection Clause. So, similarly, they must make these collections within the Constitution. And so, it's their own policy, it's policy DC ADM 005, that outlines, okay, 20% must be taken out of all incoming funds, gifts, income, the wages that they have. And there's no altering from that. And that was clear from deposition after deposition. Everyone said we... And I just want to point out several pages that I didn't cite in my brief from the Joint Appendix 181, 182, 206, and 237. Time after time, people said, he has the ability to pay, he can say, I don't want to pay 20%, but based on response, we're going to take 20%. They can't challenge the debt, they can't challenge the percentage, they can't challenge the fact that it's going to be deducted, and they make no consideration for any special circumstances. I gather there were miscalculations in what Mr. Hale owed too. Yes, there were, Your Honor. Is that, this issue of miscalculation, is something that you would say should be done at this preliminary? Yes, Your Honor, because once that money is sent over to the county, it's incredibly difficult to get it back. It's not like the department's just going to issue a refund of that money during the time if they make a mistake. What, if you look at the different cases, for example, Saksburg, and even in Timothy Hale's own grievance responses, they tell him, well, if you want, you think the money's wrongly taken, you have to go to the county to get it. So that involves taking, you know, filing perhaps another action or, you know, some other complicated process. So it is a big injury, the not being able to access those funds at that time. Thank you. Okay, please, the court. Mr. Montanez, who I represent, is, I believe, in a stronger position than Mr. Hale because Mr. Montanez had a specific court order from the judge, Judge Lieberman down in Berks County, that said to him, and it's on the records in the transcript, this would be at 664 and 665 of the journal, and it specifically says that the payment of costs, fines, and or restitution as established by the Berks County Parole Office or as established by the Pennsylvania Board of Parole as applicable. It never mentions the Department of Corrections, yet the Department of Corrections, unbeknownst to him, starts deducting money from his commissary account and without any notice, without any rationale, he doesn't know what Act 84 is. In fact, he didn't even get, as some of the other folks did get, his actual sentencing sheet, which is the 300B. The 300B, I'd like to point this out to the court because it is important, the department refers to a court order. What they're referring to is the 300B, which is document 678, and this is really their own form, the Department of Corrections' own form. It is not signed by the judge. It's signed by a deputy clerk, in my case, Vera Thomas. Now, that's the first time, 17 days after he gets sentenced, that they finally determine what the costs are. He doesn't know this. He never gets the 300B. He doesn't get the 300B, but he is informed, just to make sure I understand, he is informed at the time of sentence that he is going to be assessed. Absolutely. Right? It's in the record. Right. But he says, that sentence judge, he said, it's not going to be the Department of Corrections, it's going to be the Pennsylvania Board of Corrections, a different agency, and it's going to occur when you're getting paroled, which should be, in his case, 20 years. Now, that's a very big difference. That's what he's told by the judge. Now, the department, on the other hand, starts deducting it, and under their own doctrine, they're supposed to notify the judge for clarification. There's nothing in their record that notifies them. In fact, the record is so clear and so positive in Mr. Montanez's case that the court below said, you know, we're on summary judgment. There's a genuine issue of material fact here, so we're going to allow this to proceed. The only issue that the court below found was whether or not there was a statute of limitations problem. Isn't that a big problem here for you? Well, not after your opinion, it isn't, Judge. Yes, you and you joined in it, Judge Greenaway, and that was earlier this year, in which you recognized the continuing of a violation doctrine. Is this a continuing violation? Yes, it is. Every single deduction from his account is a discrete, tortious act. It's a tortious act. You're complaining of a denial of due process. You say the process should occur before the first deduction is made. That's correct. Now, once you know that they're taking money without having a deduction made, isn't the violation complete at that time? No, it keeps recurring. But you're not claiming you're entitled to a hearing before each? No, but I think that administratively, you could have the hearing prior to the taking, and if there is a change of circumstance, then you could reapply, as in the Ohio situation, internally, I've got to change the circumstance. I need more money for medical care, because in Pennsylvania, which nobody talks about here, the money comes out, you have to have a co-pay in the state prison to pay for medical care. So I want to get this clear. The court below on summary judgment said, OK, you've got a claim that's a statute of limitations. Under the case that you wrote in January of this year, Judge, you recognize a continuing violation, and that's what we have, in our main brief and in this brief, said it goes on all the time. In fact, it went on after he filed his complaint in November of 2004. The violations continued until 2010. How do you get over permanence? I'm sorry, Judge? Well, how do I get over, I'm going to tell you. Here's my question to you, right? It's very nice you cite to my area colleague, right? Here's the issue, though. I said, how do you get over the permanence issue, right? Continuing, you can't just throw up and say continuing violation. How do you get over permanency? Permanency is no longer a requirement. That's what the Supreme Court said in Morgan. And what you wrote about, Judge, in Mandel, there's no longer a permanency requirement. I mean, maybe I'm misreading your writing, Judge, but that's what I read. I'll go back and check on it. But in any event, it's not that it's a requirement. It's that it's an impediment. Well, I think that we have, as long as the act occurs, the tortious act occurs, and it is an act. It has to be a tortious act. It can't be an act that is meaningless, ministerial. No, this is a taking. Every time you took $5 or $10 out of his account, that's taking his property, and it has to have a hearing. One other thing that I would point out is that there's an equal protection claim here. The Commonwealth says that, well, there's been law of the case doctrine. Law of the case doctrine doesn't apply here because there's never been a decision. There's never been a decision on his equal protection claim that was in his complaint, either by the lower court or by this court when it sent this case back down. I would like to point out that when this case came back down from the Third Circuit, Judge McKee wrote some very specific questions. We tried to follow them. We did three years' worth of discovery, 16 people we interviewed from the secretary on down to the very person that signed all these orders to transport him, the people who went to the prisons. The court wanted what was going on. And I could tell you right now that in a sentencing proceeding, I argued the Buck case, which was relied on by the court below. And this is important. It's important to remember where Buck was. Buck was on preliminary objections. There was no record as to discovery, as to interrogatories, as to when there was a notice, as to when there was an opportunity to be heard. None of that came out in Buck because there's no record. There's no record. Furthermore, the court below, the Supreme Court of Pennsylvania, just relied on the fact, oh, there's a sentencing proceeding. You could raise it there. Not true. How could you raise it at sentencing? You don't even know what the costs are. You might contest the costs, as you pointed out, Judge Robb. So as I say, and as for the grievance procedure, as pointed out by my colleague, the grievance procedure, they have said repeatedly in these depositions that the grievance procedure, you can't change it. Whether it's 20%, we can't change 20%. We can't change anything at all about it. You have to go back to the court. And we went back to the court, and Judge Lieberman said, I never issued any such order that allowed any department to do it. Any further questions, I'd be happy to answer them. Thank you so much. May it please the court, Howard Hopkirk for the Department of Corrections. I think I'll just jump right into and try to address some of the questions that arose. I think the court understands the basic arguments. First, as far as the grievance procedure goes, if you, it's true that in a lot of instances, the department said, you filed a grievance, there's nothing we can do. But that gets into the whole value under Matthews v. Eldridge of whether you have a hearing or whether you have post-deprivation notice at all. Because when the department said, there's nothing we can do, that's something for the sentencing court. If you had a hearing beforehand, the answer would be exactly the same. It would be, in most, for almost all things, it would be, that has to do with sentencing. Let's talk about the value of what your colleague said that she wants to be able, her clients want to be able, pre-deprivation, to challenge the assessment of 20%. Why wouldn't her due process argument permit that kind of challenge? The argument as to the 20%, that is attacking the policy which has been created by the Department of Corrections, which, in their estimation, creates a safe harbor for any deductions which are made, are going to still protect all inmates if they have a small amount of money to be able to do, buy postage stamps, buy toothpaste, and things like that. You won't deduct if there's $10 in the account. If there's $10 in the account. We could sit here and theoretically argue, if they had just said $7, I think that probably still would be $10, and that creates a safe harbor. Also, the 20%, when they take the 20% out, they don't go back, let's say no money was added to the account during the entire month. The next month, nothing would be taken out. They don't go back and deduct from money that's already been deducted from. But her challenge is not as the violations mount. It's before they within a certain number of days, the amount or the costs are calculated, and then the DOC figures out how much is going to be taken out based on the 20%. The question is, does due process require a hearing at that point before the deductions begin? Tell us why the answer's no. Our position is, if you use the Matthews v. Eldridge balancing test, that the necessities of life for prisoners are taken care of. But Mr. Hale points out, and I think it's agreed, that the amount that he owed was miscalculated at the beginning. Shouldn't he have the opportunity at the beginning to say, look guys, you messed it up? But that would be exactly the type of thing that the sentencing court has miscalculated, not the DOC. No, I gather it was not a miscalculation of the fine and the cost. It was a miscalculation of the figures put into the process. I believe it was a mistake in what was sent from the county court to the DOC. But how does he complain about that? Well, that's something the DOC doesn't have the authority to say that the county court's assessment is incorrect. But can't Mr. Hale complain about, hey, look guys, you reversed your numbers. But what does he do about it? I think this is a good example, Your Honor, of let's say your scenario is correct. Let's say instead of $2,000, he only owed $1,500. This is something, when it goes to the assessment of his account, it's going to be 20% of what's in his account. It's going to be years before you even get up to the $1,500. At that time, no one will even remember how the mistake was made in the first place. But if what he wants to complain about is that assessment, that isn't something that needs to be addressed in a hearing up front. That is something that could be challenged through grievances, if that was the appropriate place, or he would have an opportunity to go back to the county court and get that corrected before any actual harm to him. No more, because $3,000 is assessed versus $2,500. As a practical matter, under this formula, when you're talking about someone having $50 in their account, the 20% is the same amount that's going to be taken out, whether it's $1,500 or $2,000, which is owed. But eventually, he's going to have to keep on paying. He gets out on parole, and he still is required to keep on paying, and there's a larger amount that he's bringing in, and there was a mistake made back at the beginning. How can he complain about it? Well, what I'm saying is, he's going to have plenty of time to complain. When is he told, when is he given notice of the total amount that's going to be deducted, assuming he's in prison long enough? You start taking the 20%, but does he know 20% of what? What's it being applied against? What's it satisfying? I understand that there's a disagreement in the record as to when these two particular prisoners were told, but as a general matter, Mr. Gimbel's declaration explains that notice is given before- Of the amount that's owed? Of the total- The total of fines, costs, and extortion? Yes, but I think, I don't want to overstate my position because whether they were given notice or not, our basic position, we admit that they weren't given hearings ahead of time, so what we're saying is the value of a pre-deprivation notice and hearing in these particular cases is so small, and you're talking about the costs of collecting $0.20, $0.28, and the administration of that sending that money back to the counties, that it's a much more efficient thing to just allow that to be done through grievances, and where maybe somebody actually had the wrong amount taken out, and then they can grieve that instead of having these arguments which are really saying, we don't agree with the department's policy of taking 20% out. Let me ask you this question. When you came up the last time, our opinion said, if DOC policy ensures that both administrative actions take place prior to deducting any monies from inmates' accounts, then current DOC procedure may be adequate to address the defendant's Fourth Amendment concerns. It would appear that it's already been identified by the prior panel that dealt with this that there is a constitutional problem, and that hopefully, based on the remand, that there was some addressing of that problem. It doesn't, it seems like it's come back in the same posture. It isn't in the same. Let me just add, Higgins versus Breyer, doesn't this court say that when you're taking money out of prisoners' accounts, they ought to have a pre-deprivation hearing? But I think the, when the court remanded it, they were specifically thinking about the pre-deprivation hearing, so it wasn't just the prisoners producing evidence showing how they might be harmed by not having a pre-deprivation hearing. It's also the DOC having an opportunity to talk about how the procedures work, how grievances might protect interests without a pre-deprivation hearing, and those types of things just weren't on the record when I was up here the first time. Well, that's why Higgins and our remand opinion is critical, and we'd like you to talk to that. Why isn't it so that there should be notice and pre-deprivation hearing? Well, I'm just going to, I have to go back to the Matthews v. Eldridge. You're talking about a procedure where almost 1,000 prisoners are coming into the system, being assessed. At least half of those have orders to collect money, and so the volume there, and also the minimal, in general, very small amounts of money which are being collected on a monthly basis, that if you require hearings, pre-deprivation hearings, you defeat the entire purpose of money being collected to- I'm not saying bring a hearing officer in. I'm saying present them with a form that says you owe so-and-so on fines, so-and-so on costs, so-and-so on restitution. This total amount blank will be deducted 20%. If you have any specific objections, list them here under. Something like that. Well, that would obviously be preferable to a full-blown hearing. We don't think the Constitution requires that, that the grievance procedure would be sufficient. I just have a couple more minutes. I wanted to just- Can you address the Tillman case, our decision in Tillman, and how it applies, if at all, here? Lebanon County case? Well, I think the Tillman case, I mean, it generally supports our position. In that case, inmates were charged $10 a day, and actually 50% of new funds were collected from prisoners, and that type of system was upheld by this court. And- We found a post-deprivation remedy would be adequate. Yes. And I think, even if the court were to find that there was a violation in this case, as far as the qualified immunity goes, I think the Tillman decision, the Higgins decision, the Pennsylvania Supreme Court's decision in the Buck v. Beard case, these all show that, at best, this is a very ambiguous and unclear area with more of a novel question, and that the DOC defendants would be entitled to qualified immunity. You mentioned the Gimbel Declaration a few moments ago. When you look at the state of the record in the Gimbel Declaration, doesn't that leave one with the thought that there are genuine disputes as to the material fact that really makes summary judgment inappropriate? Well, our baseline position is that the post-deprivation procedures under the Matthews v. Fact, if you agree with our legal position, would not be material. If you disagreed, it's possible that then those become material facts, which would have to be decided whether Mr. Gimbel's testimony was believed by a jury as opposed to the plaintiffs. Are you determining materiality in this context merely by the amount in dispute? No, I'm saying whether it's legally material. If you accepted my position, whether they were given a prior hearing or prior notice would be irrelevant because that's really what our position is, that the cost and burden on the department is relatively high given the assets of the defendants. I did want to mention a couple of things because the scenario of inmates not having toothpaste and not being able to mail things to the court, I think that's a little bit of a misnomer because if an inmate is truly indigent, well, first of all, they're given these things when they arrive at prison, and if they're truly indigent, they would be given basic necessities and some like postage to the courts. They would be allowed to, under DOC procedure, to still mail things. They would create a deficit in their account, and they would have to repay those things. But again, the idea that somehow these prisoners would be deprived of essential necessity of life type things or legal rights is, we don't believe is true. And I think the court understood the statute of limitations as applies to Mr. Montanez, and we believe if you look at your earlier decision, the court clearly remanded just on the due process claim and that there is no equal protection claim. And if there was, people in prison, prisoners are certainly distinct from people on the outside. What's the impediment to applying continuing violation here? Well, I think what Judge Vanaski said, that they're raising a due process claim, so when they found out about that, that's when the clock ticks. And I mean, if five years later, everything was going right and money was taken erroneously from their account, they might have a claim for that specific, like a deprivation of property, and they could file a grievance. But as far as the due process claim and the idea that there's something wrong with the hearing procedure, I don't think that's true. Thank you. Just to respond to a couple points. One is Matthews v. Eldredge can tell us the type of procedure that is needed rather than whether a procedure is needed. Here, the record is very clear that the procedures that were provided are completely meaningless. And specifically looking at Joint Appendix page 182, looking at the deposition testimony, it's clear that the inmates are unable to challenge- Would a post-deprivation remedy be adequate if they could contest the 20%? No, Your Honor, because some of these issues, as I said before, really need to be addressed up front, because once that money is sent to the county, it's very difficult to get it back. The other thing I wanted to just point out, Tillman is distinguishable here, because here we have different amounts for every individual, so the chance of error is greater than a flat housing assessment. And I also wanted to just point out for the statute of limitations issue for Montanez, there's also an issue of when he found out that the source of the violation was the Department of Corrections. It was actually not until about 2003 or so. He kept being told that it was the court that was the problem, and he believed that. He filed like four motions in state court trying to figure out what was going on. So that's another basis to find that he did not pass his statute of limitations. Well, thank you so much, counsel. We appreciate the spirited arguments, as well as the very well-done papers. We'll take the matter under advisement. Well, I think we'll have our visitors to the courtroom clear so that the students, the judges, and the clerks can chat for a minute. Great, thanks. Have a seat, folks.